IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                    CRIMINAL NO. 04-54 ERIE

LYNDA LORRAINE WOODS

CHANGE OF PLEA

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Monday, August 8, 2005.

APPEARANCES:
        CHRISTIAN A. TRABOLD, Assistant United States
        Attorney, appearing on behalf of the Government.

        THOMAS W. PATTON, Assistant Federal Public

Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1          P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 9:00 a.m.,

4   Monday, August 8, 2005, in Courtroom C.)

5

6          THE COURT:  Ms. Woods, I'm informed that you wish to

7   change the plea that you have previously entered at Count 1 of

8   the superseding indictment at Criminal No. 04-54 to a plea of

9   guilty, is that correct?

10          THE DEFENDANT:  Yes.

11          THE COURT:  I'm going to ask you to keep your voice

12   up and speak into the microphone.  Before accepting your guilty

13   plea, there are a number of questions that I'm going to ask you

14  to make certain that it is a valid plea.  If you do not

15  understand any question, please tell me, and I will explain it

16  to you.  If you wish to consult with Mr. Patton, please tell me

17  that, I'll give you the opportunity to consult.  I give you

18  these instructions because it is essential to a valid plea that

19  you understand every question before you answer it.

20       Would you please raise your right hand.

21       (Whereupon, the Defendant, LYNDA LORRAINE WOODS, was

22  sworn.)

23       THE COURT:  Do you understand that now that you have

24  been sworn, your answers to my questions are subject to the

25  penalties of perjury or of making a false statement, if you do


                              3


1  not answer truthfully?

2       THE DEFENDANT:  Yes.

3       THE COURT:  All right.  Would you tell me your full

4  name?

5       THE DEFENDANT:  Lynda Lorraine Woods.

6       THE COURT:  How old are you?

7       THE DEFENDANT:  Forty-one.

8        THE COURT:  How far did you go in school?

9        THE DEFENDANT:  I graduated.

10        THE COURT:  From high school?

11        THE DEFENDANT:  Yes.

12        THE COURT:  All right.  Are you able to communicate

13   in English?

14        THE DEFENDANT:  Pardon.

15        THE COURT:  Can you communicate in English?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Have you been able to do so, Mr. Patton?

18        MR. PATTON:  Yes, your Honor.

19        THE COURT:  All right.  Have you taken any drugs or

20   medication or have you drunk any alcoholic beverages in the

21   past 24 hours?

22        THE DEFENDANT:  No, sir.

23        THE COURT:  Are you now or have you recently been

24   under the care of a physician or psychiatrist?

25        THE DEFENDANT:  No, sir.


4


1        THE COURT:  Are you now or have you recently been

2  hospitalized or treated for any type of narcotic addiction?

3       THE DEFENDANT:  No, sir.

4       THE COURT:  Do you understand what's happening here

5  today?

6       THE DEFENDANT:  Yes.

7       THE COURT:  Does either counsel have any doubt about

8  the competence of Ms. Woods to plead guilty at this time to the

9  charge contained in the indictment; Mr. Trabold?

10       MR. TRABOLD:  No, your Honor.

11       THE COURT:  Mr. Patton?

12       MR. PATTON:  No, sir.

13       THE COURT:  I find the defendant is competent to

14  plead.  Do you have an attorney with you here today?

15       THE DEFENDANT:  Yes.

16       THE COURT:  What's his name?

17       THE DEFENDANT:  Thomas Patton.

18       THE COURT:  Have you had a sufficient opportunity to

19  discuss your case with him?

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  Are you happy with the work that he's

22  done for you?

23       THE DEFENDANT:  Yes, sir.

24          THE COURT:  Do you understand that if you continue

25   to plead not guilty and do not change your plea, you would have


                                    5


1   the right to be assisted by an attorney at the trial of the

2   charge against you?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And do you understand that if you did

5   not enter a guilty plea and that if you qualified financially,

6   you would be entitled to be assisted by an attorney at no cost

7   to you at every phase of the processing of these charges?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And do you understand that if you did

10   not plead guilty and that if there were a trial, under the

11   Constitution and the laws of the United States, you would be

12   entitled to a speedy trial by a judge and jury on the charge

13   contained in the indictment?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that if there were a

16   trial, you would be presumed to be innocent at the trial of the

17   charge against you?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  Do you understand that if there were a

20  trial, the government would be required to prove your guilt by

21  competent evidence and beyond a reasonable doubt before you

22  could be found to be guilty?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  Do you understand that if there were a

25  trial, you would not have to prove that you were innocent?


6


1        THE DEFENDANT:  Yes.

2        THE COURT:  Do you understand that if there were a

3  trial, the jury would have to be unanimous in order to find you

4  guilty of the charge?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Do you understand that if there were a

7  trial, you would have the right to participate in the selection

8  of the jury; that you would have the right to strike or

9  eliminate any prospective juror if it was demonstrated that the

10  juror would be unable to render a fair and impartial verdict;

11  and that you would have the right to strike or eliminate ten

12  jurors from the jury, and one alternate, without giving any

13  reason at all for so doing?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that if there were a

16  trial, the witnesses for the government would have to come to

17  court and would have to testify in your presence?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that if there were a

20  trial, your counsel could cross-examine the witnesses for the

21  government, object to evidence offered by the government and

22  then offer evidence on your behalf?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand that if there were a

25  trial, the government would have to pay witness fees to

7

1  witnesses you wished to call if you qualified as being

2  financially unable to pay those fees?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you understand that if there were a

5  trial, you would have the right to testify if you chose to?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that if there were a

8   trial, you would have the right not to testify and that no

9   inference or suggestion of guilt could be drawn from the fact

10  that you did not testify?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  If you plead guilty and I accept your

13  plea, do you understand that you will waive your right to a

14  trial and the other rights which I have mentioned to you, that

15  there will be no trial and that I will enter a judgment of

16  guilt and sentence you on the basis of your guilty plea after

17  considering a presentence report?

18         THE DEFENDANT:  Yes.

19         THE COURT:  If you plead guilty, do you understand

20  that you will also have to waive your right not to incriminate

21  yourself, because I'm going to ask you questions about what you

22  did in order to satisfy myself that you are guilty as charged

23  and you will have to acknowledge your guilt?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Now that I mentioned your rights to you,

1    do you still wish to plead guilty?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Have you received a copy of the

4    superseding indictment naming you, and have you discussed with

5    your counsel the charge in the indictment to which you intend

6    to plead guilty today?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you understand that you are charged

9    in Count 1 of the superseding indictment as follows:  "From in

10   and around August, 2004 to in and around October, 2004, in the

11   Western District of Pennsylvania, the defendant, Lynda Lorraine

12   Jones, did knowingly, intentionally and unlawfully manufacture

13   a mixture and substance containing a detectable amount of

14   methamphetamine, a Schedule II controlled substance.

15          In violation of Title 21, United States Code,

16   Sections 841(a)(1) and 841(b)(1)(C)."

17          Do you understand the charge?

18          THE DEFENDANT:  Yes, sir.

19          MR. PATTON:  Your Honor, it does charge, the

20   indictment charges Lynda Lorraine Woods, I believe you misspoke

21    when you said Lynda Lorraine Jones.

22         THE COURT:  I'm sorry.  Correct that to say, let the

23    record reflect Woods.  As to Count 1, in order for the crime of

24    manufacturing a mixture and substance containing a detectable

25    amount of methamphetamine in violation of 21 U.S.C. 841(a)(1)


                                    9


1    and 841(b)(1)(C) to be established, the government must prove

2    all of the following essential elements beyond a reasonable

3    doubt:

4         One.  That the defendant knowingly and intentionally

5    manufactured a mixture and substance containing a detectable

6    amount of methamphetamine.

7         That methamphetamine is a Schedule II controlled

8    substance, pursuant to 21 U.S.C. Section 812 Schedule II(c), et

9    seq.

10        Do you understand the elements of the crime?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Now, as to Count 1, do you understand

13    that the maximum penalties are as follows:

14        A term of imprisonment of not more than 20 years.

15          A fine not to exceed $1 million.

16          A term of supervised release of at least three

17   years.

18          For a second or subsequent felony drug conviction

19   that is final, whether federal, state or foreign:

20          A term of imprisonment of not more than 30 years.

21          A fine not to exceed $2 million.

22          A term of supervised release of at least six years.

23          As well as a mandatory special assessment of $100.

24          Do you understand the maximum penalty for a

25   violation of Count 1?


                              10


1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Has anyone made any threat to you or to

3   anyone else that has forced you in any way to plead guilty

4   today?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Has there been a plea agreement?

7          MR. TRABOLD:  Yes, your Honor, I've marked it as

8   Government Exhibit No. 1, it has been signed by Ms. Woods and

9   by counsel.  It indicates in its most important provisions that

10  Ms. Woods agrees to plead guilty to Count 1 and accept

11  responsibilities for the conduct charged in Counts 2 through 7.

12          Additionally, Ms. Woods waives her right to file a

13  direct appeal in this case and to file a collateral attack or a

14  habeas petition.  However, she has retained the right to file a

15  limited appeal in this case, one of those being the right to

16  appeal your decision not to suppress the evidence relative to

17  the October search in this case.

18          THE COURT:  Which was the subject matter of the

19  previous suppression motion?

20          MR. TRABOLD:  Correct.  She also retains the right

21  to appeal any enhancement in her sentence that might relate to

22  either the use of minors to commit the crime or any harm that

23  may have been caused to any minors in this case.  Obviously,

24  neither side knows whether those are really even going to be

25  applicable in this case, but she retained the right to appeal


11


1   that should you enhance the sentence based on that.

2           THE COURT:  All right.

3          MR. TRABOLD:  In exchange the government agrees to

4   move for the dismissal of the remaining counts of the

5   indictment after her sentencing.  And agrees to file a

6   three-level reduction or recommend a three-level reduction in

7   offense level for her acceptance of responsibility.

8          Finally, your Honor, the plea agreement contains a

9   stipulation between the parties that the amount pseudoephredine

10  attributable to Ms. Woods' conduct in this case is at least 40

11  grams, but less than 70 grams.

12          I would ask that Government Exhibit 1 be admitted.

13          THE COURT:  It's admitted.  Is there anything that

14  you want to add, Mr. Patton?

15          MR. PATTON:  Yes, your Honor.  On the conditional

16  nature of the plea, it is conditional on Ms. Woods' right to

17  appeal your decision on the October search.  I want to make it

18  clear that her decision to plead guilty to the charges based on

19  the August search, is driven by your decision not to suppress

20  the October search.  In other words, if you had suppressed the

21  October search, we wouldn't be pleading guilty to any of this

22  stuff for August, we feel that that was perhaps a triable case.

23  But in tandem with the August search and the October search, we

24  are entering into the plea.  And the plea agreement does state

25  that if she is successful in appealing your suppression order

12

1  on the October search, she's allowed to withdraw the plea in

2  toto and go back as well.

3        THE COURT:  All right.  And you agree with that?

4        MR. TRABOLD:  Yes.

5        THE COURT:  Has your client signed the plea

6  agreement?

7        MR. PATTON:  Yes, sir.

8        THE COURT:  You have had an opportunity, I presume,

9  to read and review the plea agreement and discuss it with Mr.

10  Patton, is that right?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Having discussed it with Mr. Patton, did

13  you understand it?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  And you agree with everything that's in

16  it?

17        THE DEFENDANT:  Yes, sir.

18        THE COURT:  And do you understand that by virtue of

19  signing it, you are attesting by your signature that you agree

20  with everything that's in it?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  All right.  Has anybody made any

23  promise, other than the plea agreement, that has induced you to

24  plead guilty today?

25          THE DEFENDANT:  No, sir.


13


1          THE COURT:  Do you understand that I'm not required

2   to accept the plea agreement that you've entered into and might

3   reject it.  If the court rejects the plea agreement, you will

4   be advised in open court, and you will have the opportunity to

5   withdraw your guilty plea.  If the plea agreement is rejected,

6   you may nevertheless continue your plea of guilty and if you

7   persist in your guilty plea after the plea agreement is

8   rejected, your sentence, or the disposition of your case, may

9   be less favorable to you than that proposed in the plea

10  agreement.  Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Do you understand that the offense to

13  which you are pleading guilty today is a felony offense, that

14  if your plea is accepted, you will be adjudged guilty of that

15  offense and that such adjudication may deprive you of valuable

16  civil rights, such as the right to vote, hold public office,

17  serve on a jury, or to possess any type of firearm; do you

18  understand that?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Under the Sentencing Reform Act of 1984,

21  the United States Sentencing Commission has issued guidelines

22  for judges to follow in determining sentences in criminal cases

23  for offenses occurring after November 1st of 1987.  Have you

24  and your attorney talked about how the Sentencing Guidelines

25  might apply to your case and the fact that the suggested


14


1  guideline ranges are now advisory by virtue of two relatively

2  recent Supreme Court decisions?

3        THE DEFENDANT:  Yes, sir.

4        THE COURT:  Do you understand that I will not be

5  able to determine the guideline sentence for your case until

6  after the presentence report has been completed and you and the

7   government have had the opportunity to challenge the facts that

8   are reported by the probation officer?

9        THE DEFENDANT:  Yes, sir.

10       THE COURT:  Do you understand that after it has been

11   determined what guideline sentence applies to a case, the judge

12   does have the authority, in some circumstances, to impose a

13   sentence that is more severe or less severe than the sentence

14   called for by the guidelines?

15       THE DEFENDANT:  Yes, sir.

16       THE COURT:  Do you understand that under certain

17   circumstances you or the government may have the right to

18   appeal any sentence which the court imposes?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  And, of course, your right to appeal in

21   this case has been circumscribed by the terms and conditions of

22   your previously described plea agreement; do you understand

23   that?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  And do you understand that parole has

15

1  been abolished and that if you are sentenced to a term of

2  imprisonment, you will not be released on parole?

3      THE DEFENDANT:  Yes, sir.

4      THE COURT:  Do you understand that if the sentence

5  is more severe than you expected it to be, you will still be

6  bound by your guilty plea and you will have no right to

7  withdraw it?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  Except for your discussions with Mr.

10  Patton about the Sentencing Guidelines, has anybody made any

11  prediction or promise to you about what your sentence in this

12  case will be?

13      THE DEFENDANT:  No, sir.

14      THE COURT:  Has anything that I have said here today

15  suggested to you what your actual sentence is going to be?

16      THE DEFENDANT:  No, sir.

17      THE COURT:  Have you been instructed by your

18  counsel, by government counsel or by anybody else to respond

19  untruthfully to any question about a promised sentence?

20      THE DEFENDANT:  No, sir.

21      THE COURT:  Ms. Woods, did you, as charged in the

22  superseding indictment in Count 1 and as previously read to you

23  by me commit the offense as charged?

24        THE DEFENDANT:  Yes.

25        THE COURT:  All right, Mr. Trabold, what would be


                                16


1   the government's proof?

2         MR. TRABOLD:  Your Honor, the government's proof in

3   this case would be that in mid August of 2004, drug agents had

4   a discussion at the Erie County jail with Ms. Woods' husband,

5   Michael Woods.  During that discussion, Mr. Woods indicated he

6   still had meth making material on his property, and offered to

7   allow the agents to go to his house and pick up the materials,

8   essentially a boxed up type lab.

9         Upon doing so, they went on to the Woods' property,

10  Ms. Woods signed a consent search form that allowed them on the

11  property, she provided them the materials that they had spoken

12  to her husband about.  And while the agents were on her

13  property, they noticed that almost all, if not all of the

14  animals on her property were in a deplorable condition while

15  the agents were there.

16          Based upon their observations of the animals, a day

17   or two later the agents obtained a search warrant to remove the

18   animals that were on her property.  During the course of

19   executing that search warrant, the officers noticed a strong

20   chemical smoke billowing from a room in the lower portion of

21   Ms. Woods' barn.  They then entered that room because they

22   feared that something, a chemical reaction was occurring and

23   that people may be in danger.  All those items in that back

24   room were removed and they were indicative of a methamphetamine

25   production lab, including the acetone that was present and, in


17


1   fact, there would be expert opinion from the PSP chemist in

2   this case that Ms. Woods was engaged in the active cook of

3   methamphetamine while the agents were there.

4          Subsequent to that, your Honor, in October of 2004,

5   a search warrant was executed at Ms. Woods' house.  Which

6   resulted in the discovery of a working methamphetamine lab

7   upstairs in her residence.  Expert testimony would indicate

8   that Ms. Woods had a methamphetamine lab and that there were

9   between 40 to 70 grams of pseudoephedrine involved in this lab.

10  As well as the fact that Titusville police and BNI agents

11  seized a whole slew of other chemicals that are necessary in

12  the production of methamphetamine.  And, in fact, there really

13  was no chemical necessary in the production of methamphetamine

14  that Ms. Woods did not have in her upstairs portion of her

15  home.  That would be the nature of the government's case.

16        THE COURT:  All right.  Ms. Woods, you just heard

17  what Mr. Trabold said by way of a summary, do you agree with

18  everything he said?

19        MR. PATTON:  Your Honor, as far as the state of the

20  animals were concerned, Ms. Woods disagrees with that

21  characterization.  That being said --

22        THE COURT:  Aside from that, do you agree with

23  everything else that Mr. Trabold said -- aside from his

24  description as to the condition of the animals?

25        THE DEFENDANT:  Yes, sir.


18


1        THE COURT:  All right.  Do you still wish to plead

2  guilty?

3        THE DEFENDANT:  Yes.

4         THE COURT:  Is it your advice that she do so, Mr.

5   Patton?

6         MR. PATTON:  Yes, sir.

7         THE COURT:  Because you acknowledge that you are in

8   fact guilty as charged at Count 1, because you know about your

9   right to a trial, because you know what the maximum possible

10  penalty is, and because you are voluntarily pleading guilty, I

11  will accept your guilty plea and enter a judgment of guilty on

12  your plea to Count 1 of the superseding indictment.

13         Therefore, it is the finding of the court in the

14  case of United States versus Lynda Lorraine Woods that this

15  defendant is fully competent and capable of entering an

16  informed plea, and that her plea of guilty is a knowing and

17  voluntary plea supported by an independent basis in fact

18  containing each of the essential elements thereof and,

19  therefore, the plea is accepted and the defendant is now

20  adjudged guilty of the charge.  Would you please sign the

21  change of plea.

22         (Whereupon, the Change of Plea is executed by the

23  Defendant and Defense Counsel.)

24         THE COURT:  Ms. Woods, a presentence report is going

25  to be prepared by the United States Probation Officer.  And it

file:///A|/WOODPLEA.TXT

19

1   is in your best interests to cooperate with him in furnishing

2   information for the report.  Because ultimately that report

3   will be important in my decision about what your sentence in

4   this case is going to be.  You and your counsel will have the

5   right to examine the presentence report before sentencing.

6           Sentencing in this case is set for November 7, 2005,

7   at 11 a.m.  Anything further, Mr. Patton?

8           MR. PATTON:  No, sir.

9           THE COURT:  Mr. Trabold, anything further?

10          MR. TRABOLD:  No, your Honor.

11          THE COURT:  All right, we're in recess.

12

13          (Whereupon, at 9:20 a.m., the Change of Plea

14   proceedings were concluded.)

15

16                    - - -

17

18

19

20

21

22

23

24

25

20

1       C E R T I F I C A T E
        – – – – – – – – – –

2

3

4

5       I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11   _____

12   Ronald J. Bench

file:///A|/WOODPLEA.TXT

13

14

15

16

17

18

19

20

21

22

23

24

25