IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA

v.                    CRIMINAL NO. 04-54 ERIE

LYNDA LORRAINE WOODS


SENTENCING



Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Friday, November 18, 2005.




APPEARANCES:
CHRISTIAN A. TRABOLD, Assistant United States
Attorney, appearing on behalf of the Government.

THOMAS W. PATTON, Assistant Federal Public

Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1           P R O C E E D I N G S

2

3           (Whereupon, the proceedings begins at 1:30 p.m., on

4   Friday, November 18, 2005, in Courtroom C.)

5

6           THE COURT:  The first order of business is to

7   address what I understand is an understanding between the

8   defendant and the government as to appropriate enhancement.

9   Do you want to address that, Mr. Patton?

10          MR. PATTON:  Yes, your Honor.  The presentence

11  report had imposed a six-level enhancement in Ms. Woods'

12  offense level pursuant to Section 2D1.1(b)(6)(C), on the

13  finding that Ms. Woods' conduct had significantly endangered

14    the life of a minor.  We had filed objections to that six-level

15    enhancement and the government had filed a response to that.

16    After that happening, Mr. Trabold and I discussed the issue

17    further and came to an understanding that we would both agree

18    that rather than the six-level enhancement applying, that the

19    three-level enhancement would apply under the section of the

20    guidelines that applied to simply endangering the life of

21    another person, not endangering the life of a minor.  And that

22    would make the total enhancement level be reduced from a 31 to

23    a 28.

24          THE COURT:  All right.  I assume that's your

25    understanding as well, Mr. Trabold?


                              3


1          MR. TRABOLD:  That's correct, your Honor.

2          THE COURT:  All right.  I make the following

3    findings.  The total offense level here is 28; with a criminal

4    history category of I.  The statutory provision as to custody

5    not more than 20 years.  The guideline provisions are 78 to 97.

6    The statutory provision as to probation is one to five.  The

7    guidelines ineligible.  The statutory provision as to

8  supervised release at least three years.  The guideline

9  provisions are three years.  Statutory provision as to a fine

10  is $1 million.  The guidelines is $12,500 to $1 million.

11  Restitution is inapplicable under both the statute and the

12  guideline provisions.  And a special assessment of $100 applies

13  with respect to both.  All right, Mr. Patton.

14        MR. PATTON:  Your Honor, it becomes crystal clear

15  reading the presentencing report that Ms. Woods, along with her

16  husband, had a terrible addiction to methamphetamine.  In that

17  methamphetamine has ripped this family apart in a way that some

18  anti-drug campaign could never create.  If you tried to create

19  a hypothetical of how methamphetamine can destroy a family, you

20  couldn't come up with as good as an example as this case

21  presents.

22        Back in December of last year when we were in front

23  of Judge Baxter arguing as to whether or not Ms. Woods would be

24  detained pending trial, whether she would be released, Judge

25  Baxter had come close to reaching the decision that she was

4

1  going to release Ms. Woods on bond on the condition that she go

2  for inpatient drug treatment.  But at the time when Judge

3  Baxter asked Ms. Woods if she thought she needed drug

4  treatment, she said no.  And you know it was just clear that at

5  that time Ms. Woods had not been able to accept the fact that

6  she was addicted to methamphetamine and it was a problem that

7  she had to address.

8       But I think the letter that Ms. Woods wrote to your

9  Honor explaining her situation shows what the last 10, close to

10  11 months of incarceration has been able to reveal to Ms.

11  Woods.  Which is that she was horribly addicted to

12  methamphetamine and it caused her to make absolutely horrendous

13  decisions that just had a terrible impact on her family.  And

14  the addiction made her be a not very good mother.  And she

15  realizes that.  She has said in the letter to your Honor that

16  she understands that she made terrible decisions, that have

17  impacted her children.  And now her children are looking at the

18  prospect of having their father serving a nine-year sentence

19  for manufacturing methamphetamine, and now looking at their

20  mother serving a sentence of somewhere between six and a half

21  years and eight years for manufacturing methamphetamine.

22       And Lacey Woods' letter to your Honor kind of puts,

23  shows the position that Lacey and the other children finding

24  themselves in.  And I think Lacey probably more eloquently than

25  anybody could state, talks about the price the children are

                                5

1  paying for this offense.  And, of course, Ms. Woods didn't

2  think of that when she was committing the offense, and I

3  understand that.  And the meth addiction prevented her from

4  seeing that.  But I think Lacey's plea to your Honor not to get

5  caught up in trying to make an example out of her mom or dad to

6  try and send a message to society that meth is bad, and as a

7  result of that, cause their family more pain than they already

8  are going through.

9         I would submit to your Honor there is no way any

10  rational member of society could conclude that a sentence of

11  six and a half years, for a person who has never been

12  incarcerated before, is not a serious sentence.  And so when

13  you are considering under 18 U.S. Code Section 3553(a) the

14  sentence that's necessary to reflect the seriousness of the

15  offense and to deter others from engaging in that offense and

16  to deter Ms. Woods from engaging in that offense once she

17  finishes her term of imprisonment, then you can take into

18   account that Ms. Woods has never been incarcerated before in

19   her life.  That she can have no misunderstanding as to the

20   seriousness of this offense because she's living the

21   consequences of it.  And that society, to the extent someone

22   tracks the sentences that are handed out in drug cases, can

23   look at this case and see if you manufacture methamphetamine,

24   you're going to go to prison for a long, long time.  So I know

25   there are powerful reactions in this case when you see Ms.


6


1   Woods or her husband get arrested for manufacturing

2   methamphetamine.  Instead of seeing there that she better stop,

3   this is not a smart thing to do, she continues doing it.  After

4   she gets searched in August of 2004, and they find evidence

5   that she's manufacturing methamphetamine, they go back in two

6   months and it's there again, inside her house, where there are

7   people present.  And, indeed, where there are her children

8   present.  And you look at that and it is hard to understand why

9   can't you get the message.

10         But, again, I think Lacey's letter explains to your

11   Honor through her own problems that she's had with

12  methamphetamine, the way she put it, you just can't understand

13  the lengths a person will go to get methamphetamine if they're

14  addicted to it.  So while you can look at it and just be --

15  really, I don't even know the right word, amazed I guess, why

16  can't you get the message.  The reason she can't get the

17  message is because she's addicted to methamphetamine.  And

18  until she was put in a place where she had no access to

19  methamphetamine, could she then start to get her mind back

20  about her, it was only then did Ms. Woods finally come to the

21  realization and understanding of what had been going on in her

22  life.

23         THE COURT:  How long has she been incarcerated?

24         MR. PATTON:  She was incarcerated at the Crawford

25  County jail since her arrest on a DUI, which is still pending,


7


1  which was -- December 16th of 2004.  She was at the Crawford

2  County jail on those charges, when the Marshals picked her up

3  and brought her up here to face the criminal charges.

4         THE COURT:  She's been in almost a year?

5         MR. PATTON:  Correct.  I think the letter that she

file:///A|/WOODSENG.TXT

6  wrote to you has shown the progress she's made.  Unfortunately,

7  it took jail for her to be able to make that progress, to get

8  along the path of understanding that she can't go back to using

9  meth.  To really figuring out how much methamphetamine cost not

10  only her, but cost her family.  And so while I know that there

11  are powerful factors in this case that would argue in favor of

12  a sentence towards the middle or higher end of the guideline

13  range, I would also ask you to consider that there really are

14  powerful arguments for a sentence at the lower end of that

15  range.

16        And Ms. Woods would like to make a statement to your

17  Honor.

18        THE COURT:  All right.  Come on up, Ms. Woods.

19        THE DEFENDANT:  I just want to say I'm sorry --

20        THE COURT:  Pull the microphone to you that way my

21  court reporter and I will be able to hear you.

22        THE DEFENDANT:  I want to say I'm sorry to my family

23  and I didn't mean for any of this -- I wish I could take it

24  back.  I'm sorry they have to pay for my mistakes.  I love

25  them.

1        MR. PATTON:  Judge, we'd also ask that you recommend

2    to the Bureau of Prisons that Ms. Woods be housed at the

3    facility in Alderson, West Virginia, that is the closest

4    facility for females.

5        THE COURT:  What's the name of it?

6        MR. PATTON:  Alderson.

7        THE COURT:  Alderson, I will.

8        MR. PATTON:  Thank you.

9        THE COURT:  All right, Mr. Trabold.

10        MR. TRABOLD:  Your Honor, I think to be able to

11    understand exactly what it is we're talking about here, I'm

12    going to show you some pictures.  These will be Government

13    Exhibits 1 through 17.  And if they don't come up well on here,

14    I certainly can make them available.  Counsel has already seen

15    all the pictures, as they are involved in this case.

16    Government's Exhibit No. 1 is just a closeup of the area where

17    Ms. Woods was manufacturing methamphetamine.  Again, if you'd

18    like, I can just provide you with the photographs.

19        THE COURT:  Why don't you do this.  Just quickly go

20    through and describe them for the record, and then bring them

21  up to me en mass.

22      MR. TRABOLD:  I can do that, your Honor.

23  Government's 1 is again the dresser where Ms. Woods was

24  manufacturing methamphetamine.  You can see in the picture that

25  there's a can of acetone, I don't know whether that's full or

9

1  empty or partially full, on top of a Coleman stove, and various

2  jars of chemicals.  Essentially, what you have is a number of

3  pictures -- Government's 2, 3, 4, 5, 6, are all pictures of the

4  bedroom area inside the Woods' residence, where Ms. Woods was

5  manufacturing methamphetamine.  And you can see mason jars of

6  various sizes of chemicals and liquids sitting on the floor in

7  close proximity to torches and things like that.  There are

8  also pictures in here, and you'll see of a hose going into a

9  bag of kitty liter.  That is the apparatus by which Ms. Woods

10  was venting off the poison gases produced by the

11  methamphetamine laboratory.

12      I have also included in here, you'll see a picture

13  of what amounts to a Ziploc bag with a red substance in it.

14  That's the pictures of the pseudoephedrine being broken down.

15          I've included a number of other pictures in here

16   just so you can see the condition of the interior of the Woods'

17   residence.  There are also a few pictures towards the end of

18   what amounts to a garbage dump on the Woods' residence.

19          I would ask that Government's 1 through 17 be

20   admitted.

21          THE COURT:  They're admitted.

22          MR. TRABOLD:  Your Honor, there's really no question

23   and counsel and I clearly agree that, obviously, Ms. Woods was

24   severely addicted to methamphetamine.  I guess the question for

25   your ultimate determination is -- is that addiction a

10

1   sufficiently mitigating circumstance in this case to kind of

2   overwhelm or outweigh all of the other what I would term to be

3   aggravating factors.  There's no question that she was

4   addicted.  However, at some point other factors in this case

5   that are present that are deeply troubling, I would submit to

6   you, have to outweigh the fact she was addicted.

7          One of the things that is troubling to me about this

8   case, this is not a defendant that just came into court that

9   was taken in by the police at a time when they were addicted

10   and that's the end of it.  They can say that they were

11   addicted, that's why they did all these things.  This is a

12   defendant whose home was searched, property anyway, was

13   searched in August of 2004, items were taken from her home, the

14   police were there, the police had talked to her on numerous

15   occasions.  Not only did the police take items of evidence from

16   her house in August, her husband was sentenced to 108 months in

17   federal custody.  And none of that caused her to change her

18   behavior in even the slightest regard.  Well, I shouldn't say

19   it didn't cause her to change her behavior.

20          It did cause her to change her behavior in this

21   troubling aspect.  It caused her to take additional steps to

22   try to avoid the police.  Because what was the thing that she

23   did after the August search.  She took her methamphetamine lab

24   from her barn and moved it into her house.  And the

25   confidential informant in this case, Mr. Roydes, says the


11


1   reason she did that was because she thought after 9 o'clock at

2   night the police could not come in and search her house.  So

3   this wasn't a defendant that was completely devoid of any

4   senses because of her addiction to methamphetamine.  In fact,

5   she took steps to try to avoid police detection subsequent to

6   August of 2004.

7        THE COURT:  Just by way of refreshing my

8   recollection, it's not really germane, but why wasn't she

9   arrested in August?

10       MR. TRABOLD:  Well, she wasn't arrested in August

11  because what they needed to do was take those items out of her

12  barn and send them to the lab for testing.

13       THE COURT:  All right.

14       MR. TRABOLD:  Really when you think about this case,

15  obviously, after Booker not only are you supposed to look at
          ───────

16  the Sentencing Guidelines and consider those, but the Booker
                                                       ───────

17  court also directs you to focus your attention again on the

18  3553 factors.  And I just want to go over a few of those

19  factors as they relate to this case.

20       Factor number one that 3553 says should be

21  considered is the nature and circumstances of the offense.

22  Obviously, this is a drug offense.  We've talked at length in

23  methamphetamine cases prior this one about the particular

file:///A|/WOODSENG.TXT

24   dangerous nature of methamphetamine.  The impact on the person

25   that's taking it and perhaps, more importantly, the impact on

12

1   the environment and those people that have to respond to the

2   scene to get rid of the methamphetamine making materials.

3          What's troubling to me, also, about this case, your

4   Honor, as it relates to the nature and circumstances of the

5   offense here, is that this is conduct that was occurring over a

6   lengthy period of time.  From August to October of 2004, Ms.

7   Woods was manufacturing methamphetamine.  The source

8   information indicates she was doing so three to four times a

9   week and yielding anywhere from 10 to 20 grams of

10  methamphetamine.  It's one thing to say that you yourself are

11  addicted to methamphetamine, it's totally another thing to take

12  what amounts to your addiction problem and spread it to Lord

13  only knows how many other people.

14         With regard to this defendant.  The history and

15  characteristics is another thing that 3553 mandates you to

16  consider, the history and characteristics of the defendant.

17  Obviously, she has no prior record, at least a very minimal

18  prior record, otherwise, she wouldn't be in criminal history

19  category I.  Again, your Honor, what's troubling to me is she

20  was unable to learn her lesson, even after seeing her husband

21  go to federal jail for 108 months.  And I agree with counsel

22  and his take on the detention hearing.  That it was apparent to

23  everyone in the courtroom that it was Judge Baxter's intention

24  to release Ms. Woods at the conclusion of the hearing.

25  However, prior to the conclusion of the hearing, Judge Baxter

13

1  asked Ms. Woods one final question, which was simply do you

2  think you need drug treatment.  It was apparent to everyone if

3  she had said yes, she would have been released.  However, she

4  said no.  And, obviously, that was under circumstances when she

5  was under the influence of drugs.  But that type of thing to me

6  should cause you to view with skepticism her ability to

7  rehabilitate herself.  Because everyone when they come into

8  court either to be sentenced here or in the Court of Common

9  Pleas, everyone says well, I'm really interested in

10  rehabilitating myself.  So not only should you look at any

11  statement or any letter she wrote as it relates to this

12  sentencing, I think you should look at all of the other things

13  leading up to the sentencing.  Because all of that should go

14  together to form the true picture of what Ms. Woods' intentions

15  are.  And when asked the question back about a year ago whether

16  she needed to be rehabilitated or was interested in

17  rehabilitating herself, she frankly said no at the time when it

18  was against her interests to do so.

19       Your Honor, the second factor that 3553 asks you to

20  consider are various factors, including the seriousness of the

21  offense, adequate deterrence and the need to protect the

22  public, and whether the defendant needs treatment.  Obviously,

23  your Honor, you can look at the pictures and determine that

24  this is a serious offense.  It's a methamphetamine related

25  offense.  We've been in this court on numerous occasions


14


1  talking about the problems of methamphetamine.

2       Counsel and I have a difference of opinion in the

3  sense of there is no question, your Honor, based on my

4  experience, what we do here in this courtroom has an impact on

5  what happens in the community.  Criminals talk to each other

6    about what's happening in the criminal justice system.  To

7    surmise that they don't know, nor do they care what their

8    associates are being sentenced to is to ignore reality.  So the

9    sentences that you impose here have an impact on the community.

10   And they have a deterrent effect on the community, there's no

11   question about it.  So to say that we're operating in a vacuum,

12   my experience tells me is not true.

13       You're also asked to provide adequate deterrence.

14   I would argue that -- the only time this defendant has

15   functioned correctly over the last several years of her life

16   has been when she's been incarcerated.  She obviously needs a

17   long-term period of rehabilitation where she has no ability to

18   obtain methamphetamine or at least we hope no ability to obtain

19   methamphetamine.  Any period of time that you can impose on her

20   where she has the ability to get her mind in order without

21   methamphetamine being present is only to her benefit.  Because

22   the circumstances of this case and the record cause me to

23   conclude that it's highly likely that Ms. Woods, when she gets

24   out of federal jail, is going to be able to stay away -- is

25   going be able to avoid methamphetamine.  It's highly unlikely

1  that she'll be able to do so.

2        Finally, your Honor, I won't belabor the point,

3  you've seen the pictures and really what the pictures stand

4  for.

5        THE COURT:  Just as an aside, one would question

6  what I had deterred then?

7        MR. TRABOLD:  Well -- I don't think you can say that

8  just because -- first of all, Ms. Woods was doing this stuff

9  while we had a lot of meth cases pending without question.  And

10  certainly you can't say that since criminals continued their

11  criminal behavior that your sentences have no deterrent effect.

12  Because we don't know how many people that are in the community

13  stopped doing criminal activity based on what we do here in

14  court.

15        THE COURT:  I guess my point is I would hope that a

16  period -- I would hope that it's not a foregone conclusion that

17  she would return to the same activity when she gets back out on

18  the street, who knows.

19        MR. TRABOLD:  I don't think it's a foregone

20  conclusion to conclude that.  My point is simply that you can't

21  say she needs an extended period of rehabilitation and then ask

22  for the shortest sentence possible when it's clear from the

23  record that at least prior to the time she went to jail, Ms.

24  Woods did not have the ability to control her behavior.

25          I really have to take issue, your Honor, with


16


1  counsel's statement, obviously, he's entitled to zealously

2  represent his clients and he's done that in this case, as well

3  as all his other cases.  But to surmise that a rational member

4  of society would conclude that a sentence that you are about to

5  impose here today would be too much or that's enough of a

6  sentence.  If you look at those pictures, a rational member of

7  society, a law-abiding citizen in this country would in no way,

8  shape or form conclude that even a sentence against Ms. Woods

9  at the high end of sentencing range was too lengthy.

10  Especially when you consider that Ms. Woods was doing all of

11  those things, after her husband got 108 months in jail and

12  while her children were in the house.  So any rational member

13  of society would have to conclude that even a sentence that is

14  in the range of 28, of an offense level 28, certainly can't be

15    too tough on Ms. Woods for the offense conduct that this case

16    represents.

17          THE COURT:  Thank you.  I want to take just a short

18    break, look at the pictures, then I'll come out and impose

19    sentence.

20          (Recess from 1:54 p.m.; until 1:58 p.m.)

21          THE COURT:  In the wake of the Supreme Court

22    decision in Booker, the Sentencing Guidelines are of course
      _____

23    advisory.  However, I'm still obligated to consult the

24    guidelines in determining an appropriate sentence.  In addition

25    to that, I'm also required to consider other factors that are


                              17


1    set forth in Section 3553(a), which requires courts to impose a

2    sentence that is "sufficient, but not greater than necessary"

3    to comply with the purposes set forth in paragraph two.

4    Section 3553(a)(2), states that those purposes are:

5          (A)  to reflect the seriousness of the offense, to

6    promote respect for the law, and to provide just punishment for

7    the offense;

8          (B)  to provide adequate deterrence to criminal

9  conduct;

10     (C)  to protect the public from further crimes of

11  the defendant; and

12     (D)  to provide the defendant with needed

13  educational or vocational training, medical care, or other

14  correctional treatment in the most effective manner.

15     Section 3553(a) further directs the sentencing court

16  to consider, (1) the nature and circumstances of the offense

17  and the history and characteristics of the defendant; the kinds

18  of sentences available; the need to avoid unwanted sentencing

19  disparities among defendants with similar records who have been

20  found guilty of similar conduct; and the need to provide

21  restitution to any victims of the offense.

22     In fashioning the sentence in this case, I have

23  carefully considered the advisory guideline range, as well as

24  the other factors which I have articulated for the record.  In

25  my view this is very serious offense.  Methamphetamine is a

18

1  very insidious drug.  The circumstances of its manufacture

2  here, as is true in many cases, demonstrates how potentially

3    dangerous it is to anyone who comes in contact with it.  Of

4    some note here is the fact that minors would have been in the

5    vicinity of the manufacturing process.  It's also extremely

6    addictive and harmful to the users.  And I would also note for

7    the record the meth problem in this area remains a significant

8    and ongoing problem.  Consequently, I believe that deterrence

9    is an important factor, as is punishment.

10          With respect to the defendant's criminal background,

11    I do note and specifically take into account the fact that she

12    has no significant criminal history, if any.  And, of course,

13    that is a factor that is mitigative.  On the other hand, I also

14    note, as was pointed out, that the conduct which forms the

15    subject matter of these charges she engaged in -- in the face

16    of, what in my view was undisputable evidence that a criminal

17    justice train was coming down the track for her.  Her husband

18    was sentenced to a significant amount of time in jail.  She

19    moved the equipment after the initial police raid.  She

20    continued with the manufacturing, notwithstanding the fact that

21    the children were there.

22          In some measure my sentence here is also informed by

23    my perception that this defendant is going to need an extended

24  period of rehabilitation, drug counseling, etc., if there's any

25  hope at all of beating the methamphetamine problem.  And I am

19

1  not unsympathetic at all with the children, particularly, the

2  11-year-old.  These are very hard things for the courts to do.

3  Would you stand up, please.

4          Pursuant to the Sentencing Reform Act of 1984, it is

5  the judgment of the court that the defendant, Lynda Lorraine

6  Woods, is hereby committed to the custody of the Bureau of

7  Prisons to be imprisoned for a term of 85 months.

8          Upon release from imprisonment, the defendant shall

9  be placed on supervised release for a term of three years.

10          Within 72 hours of release from the custody of the

11   Bureau of Prisons, the defendant shall report in person to the

12   probation office in the district to which the defendant is

13   released.

14          While on supervised release, the defendant shall not

15  commit another federal, state or local crime, shall comply with

16  the standard conditions of supervision recommended by the

17  Sentencing Commission and adopted by this court, and shall

18   comply with the following additional conditions.

19        The defendant shall not illegally possess a

20   controlled substance.

21        The defendant shall not possess a firearm or

22   destructive device.

23        The defendant shall participate in a program of

24   testing and, if necessary, treatment for substance abuse as

25   directed by the probation officer, until such time as the


20


1   defendant is released from the program by the probation

2   officer.

3        Further, the defendant shall be required to

4   contribute to the costs of services for any such treatment in

5   an amount determined by the probation officer but not to exceed

6   the actual cost.

7        The defendant shall submit to one drug urinalysis

8   within 15 days after being placed on supervision and at least

9   two periodic tests thereafter.

10        It is further ordered that the defendant shall pay

11   to the United States a special assessment of $100, which shall

12   be paid to the United States District Court Clerk forthwith.

13        I find this defendant does not have the ability to

14   pay a fine, so I will waive a fine in this case.

15        Ms. Woods, do you understand that if you choose to

16   appeal this sentence which I have imposed here today, that you

17   must do so within 10 days; do you understand that?

18        THE DEFENDANT:  Yes, your Honor.

19        THE COURT:  Would you tell me again what the request

20   was or recommendation was for placement?

21        MR. PATTON:  For the women's camp at Alderson, West

22   Virginia.  We also ask that you recommend to the Bureau of

23   Prisons that Ms. Woods be put in drug treatment.

24        THE COURT:  I make both of those recommendations on

25   the record.


21


1         MR. TRABOLD:  Your Honor, the government moves to

2    dismiss Counts 2 through 7 of the superseding indictment and

3    Counts 1 and 2 of the original indictment if it hasn't already

4    been dismissed.

5         THE COURT:  Those are dismissed.  All right, we're

6    adjourned.

7

8            (Whereupon, at 2:05 p.m., the Sentencing proceedings

9    were concluded.)

10

11                    - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

1                C E R T I F I C A T E
                 _ _ _ _ _ _ _ _ _ _

2

3

4

5        I, Ronald J. Bench, certify that the following is a

6    correct transcript from the record of proceedings in the

7    above-entitled matter.

8

9

10

11

12    _____

13    Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25